775 A.2d 645 (2001)
341 N.J. Super. 560
STATE of New Jersey, Plaintiff-Appellant,
v.
Fatima GOMEZ, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2000.
Decided July 2, 2001.
*646 Michelle Katich, Assistant Prosecutor, argued the cause for appellant (Ronald S. Fava, Passaic County Prosecutor, attorney; Ms. Katich, on the brief).
Norman A. Doyle, Jr., Kearny, argued the cause for respondent (Doyle & Brady, attorneys; Mr. Doyle, of counsel and on the brief).
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by COLLESTER, J.A.D.
Pursuant to leave granted, the State appeals from an order denying its motion for recusal of the hearing judge and dismissing count one of Indictment XX-XX-XXXX based on prosecutorial vindictiveness.
On March 12, 1996, at approximately 12:30 a.m. John McGovern, one of nine Scottish tourists, was walking along the eastbound side of Route 3 in Clifton, in the same direction as the flow of traffic. McGovern and the others had been dropped *647 off by a bus and were headed toward their hotel. They were walking on the roadway because snow embankments were on the shoulder of the road. As they walked, they separated into three groups with McGovern in the middle group. McGovern and Katherine McSherry were struck by an eastbound vehicle. While McSherry's injuries were not severe, McGovern was killed. The hit and run vehicle fled the scene.
Within a short time, suspicion centered on defendant Fatima Gomez. She acted to conceal her involvement the day after the accident by taking her Lincoln Continental to an auto body shop for repairs, claiming that someone else was driving when the car was in an accident. She replaced the windshield that same morning and was seen cleaning the interior. The following day she filed a false police report that her car was hit in a parking lot in Kearny.
When defendant was arrested, she told police that she had left work at a Little Falls restaurant after 11:00 p.m. on the night of the accident and was driving on Route 3 when she felt an impact as if someone had thrown something at her windshield. She said she pulled into a Shell station down the highway, saw her windshield was broken and continued driving to her home in Kearny.
The prosecutor presented the matter to a grand jury with instructions on the second degree charge of death by auto, N.J.S.A. 2C:11-5, and the third degree charge of hindering apprehension for the crime of death by auto by volunteering false information to a law enforcement officer, N.J.S.A. 2C:29-3b(1) or (4). On September 24, 1996, the grand jury returned a one count indictment charging defendant only with hindering apprehension.
Defendant entered a plea of not guilty and made application to the Pretrial Intervention Program (PTI). The Program Director rejected her application because she had denied any prior arrest, and a record check disclosed that on November 4, 1986 she had been arrested for welfare fraud, entered a plea of guilty to a disorderly persons offense and was placed on probation for five years.
Defendant appealed, claiming that she was never arrested, that she paid the money owed to Welfare and was unaware that she was placed on probation. The Law Division judge remanded the matter back to the Program Director for reconsideration in light of defendant's contentions. Once again the Program Director rejected defendant's application, and this time her appeal to the Law Division was denied.
Between the defendant's arraignment and her unsuccessful appeal of PTI rejection, various plea offers were extended by the prosecutor. The State's first offer was that defendant plead guilty to the indictment with exposure of 364 days in the county jail and also plead guilty to driving on the revoked list with the State reserving the right to argue that the mandatory forty-five day sentence be served consecutively. In subsequent status conferences the State raised the plea offer to three years "flat." In its final offer the State indicated it would recommend probation with up to 364 days in the county jail plus forty-five days consecutive on the revoked list violation. No agreement was reached, plea cutoff was entered and a trial date was fixed.
Defendant obtained an adjournment of the first trial date in order to file a motion to dismiss the indictment. On December 12, 1997, the motion was denied. The subsequent trial date of January 20, 1998 was adjourned, this time at the State's request in order to prepare for trial. Defendant did not object to the adjournment. *648 A new firm trial date was set for March 9, 1998.
In February 1998, defendant appeared in the Jersey City Municipal Court on a post-conviction relief (PCR) application to vacate her 1988 disorderly persons conviction. She was successful, and the conviction was vacated. Prior notice had not been given to the Passaic County Prosecutor's Office, which received a copy of the order on the day before the time for appeal lapsed. An appeal by the Hudson County Prosecutor's Office was made at the behest of the Passaic County Prosecutor, but it was dismissed by the presiding judge of the Jersey City Municipal Court for lack of jurisdiction. Defendant then moved for reconsideration of her PTI rejection in light of the expungement of her disorderly persons conviction. However, the Law Division judge assigned to her PTI appeal denied the motion.
Five days before the March 9, 1998 trial date the State moved for another adjournment, this time in order to seek a superseding indictment. Chief Assistant Prosecutor John Snowden argued that the expungement of defendant's disorderly persons conviction created a material change in the State's view of the case. He said that when he received the case for trial, he believed it had been "undercharged" since there was no count for death by auto. Nonetheless, he thought it unnecessary to return to the grand jury for a superseding indictment. He said that in his experience a sentence on a second degree charge would probably result in a defendant actually serving a custodial sentence of eleven months before parole on the presumptive sentence as opposed to incarceration of nine months before parole on the presumptive third degree sentence. However, as a result of the expungement of defendant's disorderly persons charge, she would be entitled as a first offender to a presumption of non-incarceration on a conviction of the third degree crime. In Snowden's view a non-custodial sentence was inappropriate because of the nature and facts of the case.
Snowden also told the trial judge that new and additional evidence had been obtained during his pretrial preparation that would support an indictment for death by auto. The defendant's employer was re-interviewed and said that defendant finished her duties that night as a bartender for a private party at an earlier time than he previously stated. Photographs had been taken of the roadway depicting a clear line of sight for defendant of over 600 feet, enabling a calculation that defendant had almost ten seconds to see the people walking on the roadway. Furthermore, a tape from Texas A & M University showing automobile crash-dummy collisions would illustrate by sight and sound the impact of a human body with a vehicle traveling at defendant's claimed rate of speed and would discredit her statement that she believed an object struck her windshield.
The trial judge denied the State's request for a continuance. When the State declined to move the case for trial on the scheduled date, the trial judge dismissed the indictment "with prejudice." The State appealed.
On December 30, 1998, we issued an opinion affirming the dismissal of the indictment but modified the order to eliminate the "with prejudice" designation on the ground that it was premature and unwarranted in the absence of a motion by defendant for a speedy trial or to fix a "date certain." State v. Gomez, A-4364-97T1 (December 30, 1998). In anticipation of the State seeking a new indictment, we stated that:
If the grand jury returns a new indictment within the statute of limitations, *649 the defendant can move to dismiss that indictment on due process, speedy trial or any other grounds she deems appropriate. In deciding such motion, the trial judge can evaluate the relevant facts, including prejudice to defendant caused by the prosecutor's conduct throughout the proceedings and the delay caused by the prosecutor's failure to move the case.
In anticipation of a claim of prosecutorial vindictiveness, we added the following comments:
[t]here is nevertheless a serious question as to whether the prosecutor's decision to seek a superseding indictment because of its potential impact on sentencing can be deemed "vindictive" or could otherwise prevent a timely representation to the grand jury. See, e.g., United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, reh'g denied, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978). Moreover, our well-settled policy that an "indictment should be disturbed only on the `clearest and plainest ground,'" State v. Perry, 124 N.J. 128, 168, 590 A.2d 624 (1991), quoting State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18-19, 472 A.2d 1050 (1984), clearly requires dismissal "with prejudice" as a last resort.
During the pendency of the appeal, the prosecutor re-presented the matter to a different grand jury and obtained an extension of the term of the grand jury panel pending our decision. An indictment was unsealed and returned on January 7, 1999, subsequent to our decision, and charging defendant with death by auto; hindering apprehension or prosecution; and the forth degree offense of filing a false police report. An additional defendant, Louis Callahan, was charged with tampering with evidence, N.J.S.A. 2C:29-3a(3) or (7), and false swearing, N.J.S.A. 2C:28-2c, both fourth degree offenses.
The indictment was placed on the trial calendar of the same judge who dismissed the earlier indictment. The State moved for recusal of the judge, which was denied. The defendant moved to dismiss the new indictment on grounds of prosecutorial misconduct, prosecutorial retaliation, failure to present exculpatory evidence, insufficiency of evidence and fundamental fairness.
The trial judge held that the case warranted the presumption of prosecutorial vindictiveness as to the count of the new indictment charging death by auto "not merely because the State `upped the ante' in obtaining a new indictment which included more serious charges, but also because of the confluence of the attendant circumstances surrounding the proceedings in respect to the aborted trial of the former indictment as well as the prosecutor's presentation before a subsequent grand jury." The matter was set down for an evidentiary hearing "to allow the State the opportunity to overcome the presumption."
At the hearing the State called three witnesses: Lieutenant Edward Murphy and Assistant Prosecutors Snowden and Gary Schlyen. Murphy testified that although he had some involvement in the initial investigation, it was handled primarily by the Clifton Police Department. When he turned the file over to Snowden for trial preparation on the initial indictment in December 1997, he became aware of aspects of the case that would justify a death by auto charge. He discussed with Snowden the idea of having a "photo shoot" of the scene to show defendant's visibility on the night of the accident. Because of the holidays and the necessity to close part of the well-traveled state highway, *650 the photo demonstration had to be postponed until mid-January. At that time members of the Clifton Police Department and Prosecutor's Office went to the location of the accident. Two of the three eastbound lanes were closed. Distances were marked on the roadway, and investigators took the approximate positions of the Scottish tourists in accordance with their statements. A camera was placed on a tripod at the approximate height for a driver in a vehicle, with a vehicle situated behind the camera with its lights on. Photographs were then taken at different distances.
Murphy testified that the demonstration indicated that defendant had a sight line of 600 feet, and, assuming her claimed speed of 45 m.p.h., defendant had ten seconds to see the pedestrians. He added that the Texas A & M videotape would contradict defendant's statements that she thought that the impact was similar to someone throwing something at her windshield.
Additionally, Murphy spoke with Allan Pana, defendant's employer at La Vigna Restaurant. Pana checked his records for March 11, 1996 and said that defendant worked that night as a bartender for a private party and left work between 9:30 and 10:30 p.m., which was about an hour earlier than the time he told the police when first interviewed.
Snowden testified and reiterated that when he first received the case for trial preparation he thought it was "underinvestigated" and "underindicted" but felt that the difference of two months in the probable jail time was not sufficient to warrant returning to the grand jury. He also was advised by the assistant prosecutor assigned to the grand jury that it was necessary to present additional evidence to that previously presented to obtain an indictment for the additional charge of death by auto. Snowden said that he became convinced by the evidence developed by Murphy that a return to the grand jury on a death by auto charge was warranted, but he still believed that a probable difference of only two months jail time did not justify the delay and inconvenience of seeking a superseding indictment. However, his thinking changed when he found out that defendant had her prior disorderly conviction vacated and was thereby entitled to a presumption against incarceration on the only charge against her. He first asked the Hudson County Prosecutor's Office to appeal the PCR order, and he was in attendance when the appeal was heard and denied. It was at this point that he decided that the matter should be re-presented to the grand jury for a superseding indictment on a death by auto charge.
Assistant Prosecutor Schlyen testified that he was the chief prosecutor in the appellate section and had handled the earlier appeal in this matter. He said that while the first indictment had been dismissed "with prejudice," he saw no bar in presenting the matter to a new grand jury while the appeal was pending so that the matter could proceed promptly on a new indictment if the State prevailed. He added that the return of any second indictment would be dismissed if the earlier dismissal "with prejudice" was upheld.
The trial judge dismissed the death by auto count of the second indictment based on prosecutorial vindictiveness, stating as follows:
The State has failed to overcome the presumption of vindictiveness previously found by this court. The obligation of the State was to prove, by a preponderance of the evidence, that it was not merely attempting to punish a pesky defendant for exercising protected legal rights, but rather could substantiate its charging decision on the basis of credible objective evidence. See U.S. v. *651 Krezdorn, [718 F.2d 1360, 1364-1365 (5th Cir.1983)]. Moreover, the defendant argues, and the court agrees, that the evidence adduced at the evidentiary hearings has presented a compelling picture of actual vindictiveness in respect of the State's pursuit of this indictment. The record in this case establishes that the State's decision to "up the ante" and obtain an indictment for a second degree offense was driven by the prosecutor's fixation on defendant's successful pursuit of her Jersey City PCR application. The prosecutor, laboring under the erroneous assumption that the defendant had engaged in a "flimflam", brought the awesome power of the State to bear to punish the defendant for what was nothing more than a legitimate exercise of her legal rights.
This court has consistently recognized "the well-settled principle that an indictment returned by a properly constituted grand jury is presumed valid, and should not be vitiated except on the `clearest and plainest ground.'" State v. Engel, [249 N.J.Super. 336, 359, 592 A.2d 572 (App.Div.1991) ]. The ground here are clear and plain that Count One of Indictment NO. 99-01-001 I was improperly obtained as a consequence of prosecutorial retaliation. Accordingly, defendant's motion to dismiss Count One of the indictment, with prejudice, is granted.
The prosecutor is the chief law enforcement officer of the county and as such has responsibility to investigate criminal conduct, charge violation of criminal statutes, present matters to the county grand jury and prosecute those accused of crimes. State v. Winne, 12 N.J. 152, 167-68, 96 A.2d 63 (1953); Zamboni v. Stamler, 199 N.J.Super. 378, 384-85, 489 A.2d 1169 (App.Div.1985). But his responsibility runs deeper. As attorney for the State in criminal matters the prosecutor must also act to protect the innocent, to recognize the rights and claims of victims of crimes and, above all, to uphold justice. State v. Loftin, 146 N.J. 295, 386, 680 A.2d 677 (1996); State v. Marshall, 123 N.J. 1, 152-53, 586 A.2d 85 (1991), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993); State v. Abbati, 99 N.J. 418, 434, 493 A.2d 513 (1985); State v. Farrell, 61 N.J. 99, 104, 293 A.2d 176 (1972). The prosecutor has great discretion and power particularly in the charging function. State v. Hermann, 80 N.J. 122, 127, 402 A.2d 236 (1979); In re Investigation Regarding Ringwood Fact Finding Comm., 65 N.J. 512, 516, 324 A.2d 1 (1974); State v. Laws, 51 N.J. 494, 510-11, 242 A.2d 333, cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968); see also N.J.S.A.2A: 158-4 (allowing county prosecutors and the Attorney General exclusive jurisdiction over the criminal business of the State). Allegations of abuse of that power by vindictive action are to be treated with the utmost seriousness.
The essence of the concept of prosecutorial vindictiveness is a violation of due process by retaliating against a defendant for exercising a legal right. Blackledge v. Perry, 417 U.S. 21, 27-28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628, 634 (1974). Its genesis is the prohibition against judicial vindictiveness. In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court held that an increased sentence following a successful appeal gave rise to a presumption of judicial vindictiveness since the result would deter a defendant from exercising his due process right of appeal. The Court held that a defendant cannot be subjected to a greater punishment than that imposed in the first trial unless justified by subsequent circumstances.
*652 Blackledge applied the same analysis to the prosecutor's charging power. In that case the defendant was convicted in a North Carolina court of a misdemeanor. He filed a notice of appeal and obtained a trial de novo. The prosecutor then sought and obtained an indictment for a felony based on the same conduct charged in the misdemeanor offense. The United States Supreme Court held that the prosecutor's actions indicated a "realistic likelihood of vindictiveness" and raised a presumption of prosecutorial vindictiveness against the defendant for exercising his statutory right of appeal.
A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant [] going free. And, if the prosecutor has the means readily at hand to discourage such appeals-by "upping the ante" through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy-the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.
[Blackledge, supra, 417 U.S. at 27-28, 94 S.Ct. at 2102, 40 L.Ed.2d at 634.]
In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) the Supreme Court examined allegations of prosecutorial vindictiveness in a pretrial setting. There the defendant had been indicted for uttering a forged check in the amount of $88.30, and the prosecutor's plea offer was a five year prison sentence. The prosecutor threatened to re-indict under the Kentucky Habitual Criminal Act mandating a life sentence if the defendant did not accept the offer. After the defendant refused, he was re-indicted as a habitual offender, convicted by a jury and sentenced to a life term. The Court held that the presumption of prosecutorial vindictiveness was not applicable. It distinguished Pearce and Blackledge, on the basis that in those cases the legal right was exercised after conviction, while in Bordenkircher the prosecutor's action occurred before trial and during the "give and take" of plea bargaining. The Court also deemed it immaterial that the prosecutor possessed the requisite evidence at the time of the original indictment but did not charge the defendant as an habitual offender until the subsequent indictment.
In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
[Bordenkircher, supra, 434 U.S. at 364, 98 S.Ct. at 668, 54 L.Ed.2d at 611; Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); see also State v. Bauman, 298 N.J.Super. 176, 201, 689 A.2d 173 (App.Div.), certif. denied, 150 N.J. 25, 695 A.2d 668 (1997) (rejecting defendant's contention that additional charges in a superseding indictment violated his right to due process the new indictment was sought after defendant failed to enter into a plea bargain).]
*653 The distinction between pretrial and posttrial prosecutorial actions was analyzed in greater depth in United States v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). There the defendant had initially been charged with a series of misdemeanors. After he requested a jury trial, he was indicted on felony charges and subsequently convicted. Extending Bordenkircher, the Supreme Court held in Goodwin that no presumption of vindictiveness arises in the pretrial stage. The court stated that prior to trial the prosecutor has discretion to increase charges after the defendant exercises a legal right as long as the purpose was not solely to punish the defendant for exercising the right.
As stated in Goodwin,
There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins-and certainly by the time a conviction has been obtained-it is much more likely that the State had discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.
[457 U.S. at 381, 102 S.Ct. at 2492-93, 73 L.Ed.2d at 85.]
The upshot of Goodwin and Blackledge is that although there is an opportunity for prosecutorial vindictiveness in the pretrial stage, it is insufficient to justify a presumption of vindictiveness for the pretrial action of adding or substituting charges. Blackledge, 417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634; Goodwin, 457 U.S. at 384, 102 S.Ct. at 2494, 73 L.Ed.2d at 87. The overwhelming weight of authority both before and after Goodwin restrict application of the presumption to posttrial prosecutorial actions. See, e.g., United States v. Gallegos-Curiel, 681 F.2d 1164 (9th Cir.1982)(held that defendant's indictment for felony charge after plea of not guilty to misdemeanor charge relating to same offense did not warrant presumption of vindictiveness); United States v. Andrews, 612 F.2d 235 (6th Cir.1979), cert. denied sub. nom. Brooks v. U.S., 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981)(additional charge of conspiracy filed after defendant admitted to bail pending trial held not to activate presumption of prosecutorial vindictiveness); United States v. Ricard, 563 F.2d 45 (2d Cir.1977), cert. denied, 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 507 (1978)(finding that presumption did not apply when subsequent to filing a motion to suppress in misdemeanor charge defense counsel was advised that superseding indictment would be sought if defendant did not plead guilty); People v. Hudson, 210 Cal.App.3d 784, 258 Cal.Rptr. 563 (1989), cert. denied, 493 U.S. 1027, 110 S.Ct. 736, 107 L.Ed.2d 754 (1990)(increase of charges from misdemeanor to felony after withdrawal of guilty plea did not give rise to presumption of prosecutorial vindictiveness); People v. Farrow, 133 Cal.App.3d 147, 184 Cal.Rptr. 21 (1982)(held that presumption of vindictiveness was inapplicable where prosecutors filed information adding assault with a deadly weapon after defendant's motion to dismiss was granted on original charge of possession *654 of firearm by convicted felon); see, generally, 63c Am.Jur. "Prosecuting Attorneys" § 25, 138 (1997).
Defendant relies upon United States v. Lippi, 435 F.Supp. 808 (D.N.J.1977) in which the District Court granted defendant's motion for dismissal based on prosecutorial vindictiveness, finding that felony charges were brought against defendant in retaliation for his refusal to waive his right of trial before a district judge under an earlier misdemeanor complaint filed with a magistrate. However, Goodwin and subsequent cases effectively overrule Lippi to the extent that the case applies the presumption to pretrial situations.
This distinction between pretrial and posttrial actions of the prosecutor are well-grounded and represent a realistic understanding of the process of prosecution. Trial preparation or continuing investigation may well lead the prosecutor to the reasonable conclusion that additional or substituted charges are appropriate. See United States v. Griffin, 617 F.2d 1342, 1346 (9th Cir.) cert. denied, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980); United States v. Jamison, 505 F.2d 407, 416-17 (D.C.Cir.1974). The fact that a prosecutor seeks or obtains additional charges after a defendant seeks and asserts a right prior to trial should not result in a per se presumption of vindictiveness. Rather the issue is whether the prosecutor's action was solely retaliation against defendant for the exercise of a legal right. Goodwin, supra, 457 U.S. at 380, 102 S.Ct. at 2495, 73, L.Ed.2d at 84-85.
Based upon Goodwin and related cased, we find that the trial judge incorrectly applied the presumption of prosecutorial vindictiveness to the prosecutor's decision to present the charge of death by auto to a second grand jury. Moreover, in our earlier decision in this matter we anticipated the re-presentment of the case to the grand jury and a possible challenge to the indictment based on grounds of speedy trial or other prejudice to defendant. We further anticipated the issue now presented by noting that there was "serious question" as to whether a prosecutor's decision to seek indictment on additional charges constituted prosecutorial vindictiveness. Here the matter was re-presented to a different grand jury and included evidence not previously presented along with instructions as to the charge of death by auto. We find no basis for imposition of the presumption of prosecutorial vindictiveness under these circumstances.
Furthermore, even assuming a proper application of the presumption of prosecutorial vindictiveness at this pretrial stage, the State met its burden by presenting sufficient proof of non-vindictive reasons for resubmitting the matter to a grand jury so as to rebut any presumption.
Murphy's testimony at the hearing detailed new information that had not been heard by the first grand jury. The findings of the trial judge that the additional information was merely the "reshuffling and sanitation of evidence," and that the prosecutor manipulated evidence "in such a fashion to create a half truth," improperly substituted the court's judgment for that of the grand jury. Grand jury proceedings are not trials. State v. Holsten, 223 N.J.Super. 578, 583-85, 539 A.2d 325 (App.Div.1988); State v. Laws, 262 N.J.Super. 551, 562, 621 A.2d 526 (App.Div.), certif. denied, 134 N.J. 475, 634 A.2d 523 (1993); State v. Ferrante, 111 N.J.Super. 299, 305, 268 A.2d 301 (App. Div.1970). A grand jury may consider and give weight to the evidence adduced by the State and make its determination as to whether the facts presented justify the requisite probable cause for voting an indictment without judicial second-guessing.
*655 In reviewing Snowden's testimony that the case was "underinvestigated and undercharged," the trial judge characterized the statement as "nothing more than fanciful notions" and found that there was "compelling evidence that the decision to `up the ante' was related to only one circumstance: defendant's successful PCR application in January, 1998."
It is not our function to review the record as a court of first instance but to determine if sufficient credible evidence in the record as a whole supports the findings of the fact finder, giving appropriate deference to the opportunity to hear and see witnesses. State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). However, the rule is not absolute. "[W]here the focus of the dispute is not credibility but, rather, alleged error in the [fact finder's] evaluation of the underlying facts and the implications to be drawn therefrom, our function broadens somewhat." Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J.Super. 604, 609, 575 A.2d 903 (App.Div.), certif. denied, 122 N.J. 372, 585 A.2d 379 (1990).
Applying these tenets to the instant case, we are satisfied that we are not bound by the determination of the trial judge that the State presented insufficient proof to overcome a presumption of vindictiveness, assuming that the presumption properly applied. We find that there was a sufficient showing of non-vindictive action from both the testimony of Murphy of additional investigation and information uncovered and in Snowden's testimony of his belief that the case had been undercharged and as a result did not insure a proper penal consequence upon conviction.
In criticizing Snowden's testimony as to his opinion as to the probable sentence and penal consequences to defendant, the trial judge said, "Snowden's alleged perception of the court's sentencing temperament are not only unfounded but border on being disrespectful." We find nothing improper or disrespectful in a prosecuting attorney considering potential penal consequences in determining charges to be submitted to and considered by a grand jury. A man was killed. The prosecutor could well consider that the person seemingly responsible for that death could escape incarceration unless a higher degree crime was charged that was consistent with proofs which could be presented to a grand jury.
Furthermore, the trial court's finding that Snowden sought a death by auto charge solely in retaliation for defendant's successful PCR order, ignores the uncontradicted testimony of Murphy that he began his investigation of possible death by auto charge before defendant made her PCR application in Jersey City.
We hold that it was error to apply the presumption of prosecutorial vindictiveness in this pretrial setting and, alternatively, that the State set forth sufficient proof of a non-vindictive purpose in presenting the case to a second grand jury. Finally, while a defendant may still prove a due process violation in the absence of a presumption of prosecutorial vindictiveness by affirmative proof of actual vindictiveness, no such proofs were presented herein. Bordenkircher, 434 U.S. at 366-68, 98 S.Ct. at 670, 54 L.Ed.2d at 612; Goodwin, 457 U.S. at 381, 102 S.Ct. at 2493, 73 L.Ed.2d at 86; State v. Bauman, 298 N.J.Super. at 204-05, 689 A.2d 173; see also State v. Long, 119 N.J. 439, 456-67, 575 A.2d 435 (1990).
While we disagree with the conclusion of the trial judge, we do not disagree with some of his criticisms of the prosecutor's office. By the State's own admission there was no serious investigation *656 or reconstruction of the accident scene until the case was given a fixed trial date. The prosecutorial gamesmanship after the State became aware of the defendant's PCR order was a proper subject for judicial rebuke and amply justified the dismissal of the initial indictment. The critical comments of the trial judge are understandable in light of the court's power and responsibility for the timely and efficient disposition of cases on the criminal calendar. However, as we previously stated,
There is an overriding policy which is firmly imbedded in our law which disfavors the procedural dismissal of cases, except on the merits. Procedural dismissal is a choice of last resort not one of first instance. Surely, dismissal should not ordinarily, if ever, be used punitively or as a method of calendar control.
... "[W]e must never forget that courts exist for the sole purpose of rendering justice according to law. No eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case."
[State in the Interest of D.J.C., 257 N.J.Super. 118, 121, 607 A.2d 1371 (App.Div.1992) (citations omitted).]
[15] In addressing the State's appeal from the order denying recusal by the trial judge, we find no actual bias to mandate recusal. R. 1:12-1(f); State v. Salentre, 275 N.J.Super. 410, 646 A.2d 482 (App. Div.), certif. denied, 138 N.J. 269, 649 A.2d 1289 (1994). However, in the course of his written opinion, the trial judge made findings concerning certain of the State's proofs that suggest that a different judge should preside at trial. Commenting on the "photo shoot," the judge said,
In respect of the photographic examination of the scene conducted by Lt. Murphy, the "evidence" is subject to considerable criticism in the manner it was created. For instance, the photographs do not reflect the scene of the accident as it appeared on March 12, 1996. The photographs do not depict the considerable snow which had accumulated along the side of the highway, nor do they reflect the lighting conditions o[f] highway traffic that existed on the date of the accident. Most significantly however, the human props who were submitted for the decedent in these photographs were attired in different clothing than was the decedent which materially enhanced their visibility.
We anticipate that the State will seek to introduce these photographs on the issue of the defendant's ability to observe the people walking along the highway at the time of the accident and may well try to introduce testimony as to her reaction time based on the photographs. The issue of admissibility of this evidence has an obvious bearing on the State's burden of proving that defendant operated her vehicle in a reckless manner violative of N.J.S.A. 2C:11-5. Accordingly, it is appropriate to have the case referred to a different trial judge who will be unfettered by comments on the record which could be interpreted as an advance evidential ruling on admissibility.
Reversed and remanded for proceedings consistent with this opinion.