**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4254-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TERELL L. HUBBARD,
a/k/a RELL,

    Defendant-Respondent.

_____

Submitted November 16, 2020 – Decided January 8, 2021

Before Judges Messano, Hoffman, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 16-01-0061.

Helmer, Conley & Kasselman, P.A., attorneys for appellant (Jack J. Lipari, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Terell L. Hubbard was tried on the third indictment returned by a Cumberland County grand jury; the first two indictments were dismissed by the State and superseded by subsequent grand jury presentations. The jury convicted defendant of the lesser-included offenses of second-degree manslaughter, N.J.S.A. 2C:11-4(b)(1), and simple assault, N.J.S.A. 2C:12-1(a)(1), in the death of his five-month-old daughter, L.H., and acquitted defendant of endangering L.H.'s welfare.[1] The judge sentenced defendant to a seven-year term of imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant raises the following points for our consideration:

> POINT I
>
> THE LOWER COURT ERRANTLY ADMITTED DEFENDANT'S CUSTODIAL STATEMENTS INTO EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, IN VIOLATION OF THE PRINCIPLES OF THE "MIRANDA" CASE AND ITS PROGENY, IN VIOLATION OF NEW JERSEY STATE CONSTITUTIONAL AND COMMON LAW; THESE STATEMENTS WERE INVOLUNTARY AND SHOULD HAVE BEEN EXCLUDED FROM THE TRIAL; THE ERRANT ADMISSION OF THESE STATEMENTS REQUIRES REVERSAL.[2]

---

[1] We use initials of the child victim pursuant to Rule 1:38-3.

[2] Miranda v. Arizona, 384 U.S. 436 (1966). We have omitted the subpoints of this argument.

A-4254-17T3

POINT II

THE STATE ELICITED TESTIMONY IN VIOLATION OF THE COURT'S ORDER SUPPRESSING DEFENDANT'S STATEMENT OF OCTOBER 20, 2008, VIOLATING THE DEFENDANT'S CONSTITUTIONAL RIGHTS AGAIN AND PREJUDICING HIS RIGHT TO FAIR TRIAL. (NOT RAISED BELOW)

POINT III

THE CONVICTION MUST BE VACATED AND THE INDICTMENT DISMISSED ON ACCOUNT OF PROSECUTORIAL VINDICTIVENESS AND IN VIOLATION OF DEFENDANT'S STATE AND CONSTITUTIONAL RIGHTS OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITU[T]ION AND ARTICLE I, PARAGRAPHS ONE AND EIGHT OF THE NEW JERSEY STATE CONSTITUTION, AS WELL AS IN THE EXERCISE OF THE COURT'S SUPERVISORY AUTHORITY. (NOT RAISED BELOW)

POINT IV

THE CONVICTION MUST BE VACATED AND THE INDICTMENT DISMISSED ON ACCOUNT OF MISCONDUCT AND IRREGULARITY IN THE GRAND JURY PRESENTATION, AND VIOLATION OF THE DEFENDANT'S RIGHT TO INDICTMENT BY GRAND JURY UNDER CONSTITUTION AND ARTICLE I, PARAGRAPH 8 OF THE NEW JERSEY CONSTITUTION. (NOT RAISED BELOW)

POINT V

THE LOWER COURT ERRED IN ITS RULING IN LIMINE, INASMUCH AS IT INDICATED THAT IT WOULD ALLOW BAD ACT EVIDENCE IF THE DEFENDANT WERE TO TESTIFY THAT HIS ACTIONS WERE ACCIDENTAL, AND THUS, IN EFFECT, DENIED THE DEFENDANT THE RIGHT TO PRESENT SUCH ACCIDENT AS A DEFENSE.

POINT VI

DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY VERDICTS WERE INCONSISTENT, THE VERDICT WAS NOT SO SUFFICIENTLY SUPPORTED BY THE EVIDENCE AS TO COMPENSATE FOR THE INCONSISTENCY, AND THE REASON FOR THE INCONSISTENCY IS FAIRLY ASCERTAINABLE; AND ALSO BECAUSE THE VERDICT, IN ANY EVENT, WAS AGAINST THE WEIGHT OF THE EVIDENCE.

POINT VII

THE LOWER COURT ERRED IN FAILING TO OFFER SIMPLE ASSAULT SPECIFICALLY AS A LESSER[-]INCLUDED OFFENSE WITHIN AGGRAVATED MANSLAUGHTER AND MANSLAUGHTER AND THE VERDICT SHEET WAS MISLEADING. (NOT RAISED BELOW)

POINT VIII

THE TRIAL COURT ERRED IN PERMITTING POLICE TESTIMONY THAT EVALUATED CREDIBILITY AND IMPLIED GUILT.

A-4254-17T3

POINT IX

THERE WAS PREJUDICIAL AND REVERSIBLE ERROR IN TESTIMONY CONCERNING A CLAVICLE FRACTURE. (NOT RAISED BELOW)

POINT X

CUMULATIVE ERROR RENDERED THE TRIAL UNFAIR REQUIRING REVERSAL. (NOT RAISED BELOW)

POINT XI

DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY STATE CONSTITUTION. (NOT RAISED BELOW)

We have considered these arguments based on the record and applicable legal standards. We affirm.

I.

Proper consideration of the arguments raised in Points III and IV require us to detail the complicated procedural history leading up to trial and provide some general context for the charges.

On October 20, 2008, defendant was home alone with L.H. when he called 9-1-1 to report she had stopped breathing. Medical personnel later revived her, but she ultimately passed away after being removed from life support. Police

first interrogated defendant on the day of the incident (the October 2008 statement); they interviewed him again on May 7, 2009 (the May 2009 statement). The second interview took place after the autopsy report indicated L.H. died from acute cervical trauma and aggravation of a congenital intracerebral vascular malformation. Defendant admitted throwing the child on the bed to stop her crying; L.H. then went silent, at which point defendant called 9-1-1.

Defendant was initially charged in a complaint/warrant with aggravated manslaughter, N.J.S.A. 2C:11-4(b)(1). A grand jury indicted defendant in December 2010, charging him with manslaughter and endangering. Defendant challenged the admissibility of his two statements to law enforcement, and the judge conducted a bifurcated evidentiary hearing. He suppressed the October 2008 statement, and the State sought leave to appeal. We denied that motion, pending the judge's decision on the admissibility of the May 2009 statement. In the interim, the State sought and obtained a superseding indictment that additionally charged defendant with second-degree aggravated assault of L.H., N.J.S.A. 2C:12-1(b)(1), i.e., purposefully, knowingly or recklessly under circumstances manifesting extreme indifference to human life, caused serious bodily injury to L.H.

The judge held an evidentiary hearing on the May 2009 statement and denied defendant's motion to suppress. We granted the State's motion for leave to appeal the order suppressing the October 2008 statement; defendant did not move to appeal the denial of his motion to suppress the May 2009 statement. We reversed the order suppressing the October 2008 statement. State v. Hubbard, A-2221-12 (App. Div. Oct. 11, 2013). In June 2015, the Supreme Court reversed our judgment, reinstating the Law Division's order suppressing the October 2008 statement. State v. Hubbard, 222 N.J. 249, 272 (2015). The Court held the custodial interrogation leading to the October 2008 statement was "conducted without administration of defendant's Miranda rights[.]" Ibid.

At the first status conference following the Court's remand, defendant rejected the State's plea bargain offer, i.e., plead guilty to manslaughter with a recommended five-year sentence subject to NERA. The next day, the prosecutor wrote to defense counsel. He revoked the plea offer, declined extending another, and indicated the State would present the matter to a third grand jury to address the "inconsistent charges" in the existing indictment. The prosecutor's letter implied this inconsistency was apparent from the culpable mental states required to prove the crimes charged in the indictment: reckless manslaughter, knowing or purposeful aggravated assault, and knowingly endangering the welfare of a child.

In January 2016, a grand jury returned the superseding indictment on which defendant was tried. The only difference from the second indictment was the elevation of the first count from second-degree manslaughter to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). The aggravated assault and endangering counts remained the same. In June, the State tendered another plea offer; in return for defendant's guilty plea to aggravated manslaughter, the prosecutor would recommend a maximum sentence of ten years' imprisonment, subject to NERA. Defendant rejected the offer and proceeded to trial.

Defendant argues the third grand jury presentation demonstrates prosecutorial vindictiveness and punishment for defendant's successful defense on interlocutory appeal. He also contends that the third presentation was flawed by prosecutorial misconduct. Defendant urges us to reverse his conviction and dismiss the indictment.

With limited exceptions that do not apply here, "objections based on defects in the institution of the prosecution or in the indictment . . . must be raised by motion before trial." R. 3:10-2(c). "[O]bjections alleging procedural irregularities in the grand jury proceeding[s]" are included in the rule's purview. Pressler & Verniero, Current N.J. Court Rules, cmt. 3.3 on R. 3:10-2 (2021). Among other things, "[t]his rule governing the timing of the motion recognizes the right of the State to cure any irregularity." State v. Simon, 421 N.J. Super.

547, 551 (App. Div. 2011) (citing State v. Womack, 145 N.J. 576, 590 (1996); State v. Hart, 139 N.J. Super. 565, 569 (App. Div. 1976)).

Defendant concedes no motion to dismiss the indictment was made in the Law Division. As a result, we could refuse to consider these arguments raised for the first time on appeal. State v. Branch, 301 N.J. Super. 307, 319 (App. Div. 1997), rev'd in part on other grounds. 155 N.J. 317 (1998); State v. R.W., 200 N.J. Super. 560, 572 (App. Div. 1985), mod. on other grounds., 104 N.J. 14 (1986); State v. Spano, 128 N.J. Super. 90, 92 (App. Div. 1973). Nevertheless, for the sake of completeness, and because the State does not assert defendant's failure to comply with Rule 3:10-2 bars our review, we briefly address the merits of defendant's arguments.

"One of the guiding principles to be followed by a court when considering a motion to dismiss an indictment is that 'a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground.'" State v. Zembreski, 445 N.J. Super. 412, 424–25 (App. Div. 2016) (quoting State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015)). "As there is no prohibition against a prosecutor seeking a superseding indictment before trial, an indictment is not 'deficient' or 'defective' because it is amended

to include a new charge."  Id. at 425 (citing State v. Bauman, 298 N.J. Super. 176, 205 (App. Div. 1997)).[3]

"[A]bsent a showing of 'vindictiveness' — meaning 'the prosecutor's action was solely [in] retaliation . . . for [defendant's] exercise of a legal right' — a superseding indictment will not be disturbed."  Ibid.  (second and third alterations in original) (quoting State v. Gomez, 341 N.J. Super. 560, 575 (App. Div. 2001)); see also Shaw, 241 N.J. at 240 ("Prosecutorial vindictiveness in the indictment process may also run afoul of due process and warrant court intervention." (citing Blackledge v. Perry, 417 U.S. 21, 28 (1974); Gomez, 341 N.J. Super. at 571–72)).  In Gomez, we held that

> although there is an opportunity for prosecutorial vindictiveness in the pretrial stage, it is insufficient to justify a presumption of vindictiveness for the pretrial action of adding or substituting charges.  The overwhelming weight of authority . . . restrict[s] application of the presumption to posttrial prosecutorial actions.
>
> [341 N.J. Super. at 574 (citing Blackledge, 417 U.S. at 27).]

Here, the third indictment preceded trial, and no presumption of vindictiveness applies to the elevation of count one to aggravated manslaughter.

---

[3]  In State v. Shaw, 241 N.J. 223, 243 (2020), the Court exercised its supervisory power and held that in the absence of additional evidence, a prosecutor may not seek an indictment after two grand jury no bills without advance approval from the vicinage Assignment Judge.

A-4254-17T3

We acknowledge defendant's argument that the prosecutor's stated purpose in re-presenting the case — to rectify "inconsistent charges" in the existing indictment — lacks credence. Aggravated manslaughter, like manslaughter, requires proof of reckless conduct. Additionally, one may recklessly commit an aggravated assault under N.J.S.A. 2C:12-1(b)(1); the conduct need not be purposeful or knowing.

However, we have been provided with the grand jury transcripts from all three grand jury presentations. In 2016, the prosecutor submitted the charge of knowing, purposeful murder for the grand jurors' consideration. In other words, the State's presentation sought an indictment on a charge that required a purposeful or knowing mental state; that the grand jury chose not to return an indictment for murder does not demonstrate the prosecutor's stated purpose was a ruse or his motive vindictive.

Perhaps more importantly, the evidence presented to secure the 2010 indictment was limited to less than fourteen pages of testimony from Sergeant Alexis Sheftall, the investigating officer from the Cumberland County Prosecutor's Office, and sparked a single question from the panel. The sergeant's testimony was even shorter in 2012, and provoked no questions from the panel. In 2016, the officer's testimony was more extensive, nearly twice as many pages in the transcript, and referenced the findings of a third medical consultant, a

"child patholog[ist]," never mentioned in the earlier grand jury presentations. Members of the grand jury repeatedly asked questions after Sergeant Sheftall testified. In short, no presumption of vindictiveness applies to the third grand jury presentation, and defendant failed to demonstrate that it was "solely [in] retaliation" for defendant's successful appeal to the Court. Gomez, 341 N.J. Super. at 575.

We also reject the arguments defendant makes in Point IV. Essentially, he contends the prosecutor presented evidence to the grand jury about pre-existing, healing injuries found on L.H. at autopsy without advising the panel that defendant was not charged with having caused those injuries or the congenital vascular malformation. He objects to the sergeant characterizing the opinion of a medical expert that the force necessary to produce the spinal injuries to L.H. was equal to a fall from several stories. Lastly, he argues the prosecutor's instructions to the grand jury were misleading and inadequate. Combined, defendant contends the presentation was a "subversion of the grand jury process." We disagree.

Rule 3:10-2's requirement that a motion to dismiss an indictment be made before trial also "allows preservation of the issue because a guilty verdict is universally considered to render error in the grand jury process harmless." Simon, 421 N.J. Super. at 551–52 (citing State v. Lee, 211 N.J. Super 590, 599

(App. Div. 1986)).  This general principle makes defendant's claims of alleged errors in the third presentation harmless errors if errors at all.  As we said in State v. Warmburn, "a subsequent finding of guilty by a properly instructed jury 'represents a finding beyond a reasonable doubt that defendant[] w[as] guilty of the offense.  Thus, even if the grand jury instructions were erroneous, the error was rendered harmless by the subsequent guilty verdict.'"  277 N.J. Super 51, 60 (App. Div. 1994) (alterations in original) (quoting State v. Ball, 268 N.J. Super. 72, 120 (App. Div. 1993)); see also State v. Cook, 330 N.J. Super. 395, 411 (App. Div. 2000) (applying same principle to failure to provide grand jury with alleged exculpatory evidence).

Here, defendant's assertions of misconduct in the presentation of evidence or legal instructions to the third grand jury panel are harmless errors in light of the jury's verdict after trial and compel neither reversal nor dismissal of the indictment.

## II.

In Point I, defendant contends the motion judge erred by ruling the May 2009 statement was admissible at trial.  He argues in Point II that the State elicited testimony during trial about the October 2008 statement, which the Court suppressed.

As already noted, the officers did not administer Miranda warnings to defendant in October 2008; they did administer warnings to him prior to the interrogation that produced the May 2009 statement. At the evidentiary hearing on that statement, the motion judge considered the testimony of Sergeant Sheftall and Detective Travaline, who interrogated defendant, and saw the video recording of the May 2009 interrogation.

Following the hearing, the judge rendered a comprehensive oral decision. He specifically considered the evidence in light of State v. O'Neill, 193 N.J. 148 (2007). There, the Court considered the effect of pre-warning custodial interrogation on a defendant's subsequent post-warning waiver of rights and the statement made thereafter, the so-called "two-step, 'question-first, warn-later' interrogation . . . technique[.]" Id. at 180. The Court held:

> [W]hen Miranda warnings are given after a custodial interrogation has already produced incriminating statements, the admissibility of post-warning statements will turn on whether the warnings functioned effectively in providing the defendant the ability to exercise his state law privilege against self-incrimination . . . . [C]ourts should consider all relevant factors, including: (1) the extent of questioning and the nature of any admissions made by defendant before being informed of his Miranda rights; (2) the proximity in time and place between the pre- and post-warning questioning; (3) whether the same law enforcement officers conducted both the unwarned and warned interrogations; (4) whether the officers informed defendant that his pre-warning statements could not be used against him; and (5) the degree to which the post-

14

warning questioning is a continuation of the pre-warning questioning. The factual circumstances in each case will determine the appropriate weight to be accorded to any factor or group of factors.

. . . .

We emphasize that we are not pronouncing a bright-line rule. For example, <u>if the officers' pre-warning questioning is brief and the defendant's admissions are not incriminating or are barely incriminating[,] and if there is a substantial break in time and circumstances between the pre- and post-warning interrogations, then those factors would militate against suppression of the defendant's statements</u>.

[<u>Id.</u> at 180–81 (second emphasis added).]

The motion judge found both officers credible. He noted the May 2009 interrogation took place 199 days after the unwarned October 2008 interrogation. The officers only questioned defendant again "after . . . receiving scientific evidence that caused them to be suspicious." The judge determined there was no "single, un-warned sequence of questioning." The judge further found that defendant's first, now suppressed, statement was not incriminatory and contained "very little . . . that could be utilized as direct evidence in this prosecution." Lastly, the judge rejected any contention that the statement was the product of coercion or the overbearing of defendant's free will.

Defendant contends the judge misapplied O'Neill, and the officers' use of deceptive and aggressive questioning techniques effectively "diluted" the Miranda warnings. We disagree.

We "must defer to the factual findings of the trial court when that court has made its findings based on the testimonial and documentary evidence presented at an evidentiary hearing or trial." Hubbard, 222 N.J. at 269. "An appellate court owes no deference, however, to 'conclusions of law made by lower courts in suppression decisions,' which are reviewed de novo." State v. A.M., 237 N.J. 384, 396 (2019) (quoting State v. Boone, 232 N.J. 417, 426 (2017)).

The judge considered the factors enunciated in O'Neill and properly applied them to the factual findings he made. Considering the language from O'Neill we highlighted above, it is beyond cavil that defendant's first statement was "barely incriminating" and there was "a substantial break in time and circumstances" between the two statements. 193 N.J. at 181. Although Detective Travaline was present during both interviews, the judge found, and the video corroborates, that a different officer, Sergeant Sheftall, primarily conducted the second interrogation. The contention that the judge misapplied O'Neill warrants no further discussion. R. 2:11-3(e)(2).

As to the voluntariness of the statement, the State bears the burden of proving beyond a reasonable doubt that defendant's statement was the result of a voluntary waiver of his rights and "that the police did not overbear the will of the defendant." State v. Hreha, 217 N.J. 368, 383 (2014) (citing State v. Galloway, 133 N.J. 631, 654 (1993)). "Determining whether the State has met that burden requires a court to assess 'the totality of the circumstances, including both the characteristics of the defendant and the nature of the interrogation.'" Ibid. (quoting Galloway, 133 N.J. at 654).

Defendant cites State v. Patton, where we held, "[T]he fabrication of evidence by police to elicit a confession and admission of that evidence at trial, violates due process, and any resulting confession is per se inadmissible." 362 N.J. Super. 16, 46 (App. Div. 2003). Here, the investigators did not fabricate physical evidence and show it to defendant to compel incriminatory statements. During the questioning, they displayed the actual autopsy report, not fabricated evidence.

Defendant cites to State v. L.H., where the interrogating officers constantly promised "'help' and 'counseling'" for the defendant, and that he would "stay out of jail" and see his daughter if he told the truth, despite the defendant's reluctance to "giv[e] up the right to remain silent[,]" 239 N.J. 22, 31, 33 (2019). After considering the totality of circumstances surrounding the

interrogation, the Court affirmed our judgment "that the detectives secured an involuntary confession." Id. at 52.

The motion judge, who saw the same videorecording that we have viewed, concluded the State proved beyond a reasonable doubt that defendant's May 2009 statement was not the product of coercion or otherwise resulted from the interrogating officers' deception that overbore defendant's free will. The very limited citations defendant makes to the transcript of the May 2009 interrogation demonstrate its qualitative difference from the techniques the Court found constitutionally deficient in L.H. and cases cited therein.[4]

In Point II, defendant claims the prosecutor's questioning of Sergeant Sheftall before the jury as she introduced the recording of the May 2009 statement, implicated the existence and contents of defendant's October 2008 statement, now suppressed. The prosecutor asked Sheftall if at the beginning of the May 2009 interview, did defendant "repeat . . . the information that he had

---

[4] Defendant also argues that the jury saw a very brief portion of the interrogation in which the officers permitted a worker from the Division of Youth and Family Services (DYFS) into the room. She posed several questions to defendant. Defendant contends this "fatally diluted" the Miranda warnings, because the DYFS worker said she was only involved in the "civil part" of the investigation. The argument was not specifically raised below, nor was there a specific objection to this portion of the video being played for the jury. In any event, we reject defendant's claim that this transformed an otherwise voluntary statement into one requiring suppression. Moreover, defendant's answers to the questions posed by the worker were not incriminatory.

provided back in October of 2008." After an objection and sidebar, the judge ordered the prosecutor to rephrase the question. The prosecutor asked: "Detective, at the beginning of the interview in May did the [d]efendant tell you that he was home with his daughter on October 20th?" Defendant's argument is meritless and warrants no further discussion. R. 2:11-3(e)(2).

III.

Defendant's remaining arguments center on alleged errors made by the trial judge in his evidentiary and legal rulings. Immediately before trial, the State indicated its intention to introduce evidence that L.H.'s mother took her for medical attention one month before her death. The doctor diagnosed L.H. with a fractured clavicle; the autopsy revealed L.H. had other healing injuries. Defendant objected to introduction of any evidence of these other injuries as evidence of uncharged bad acts. See N.J.R.E. 404(b). The judge conducted a Cofield[5] analysis and excluded the evidence "because it's so bad and so prejudicial to the defendant[.]" However, the judge ruled that if defendant asserted the injuries were because of an "accident[,]" then "he opens the door" and "it's going to have to come in[.]" Defendant did not testify or present any witnesses at trial. He now contends the judge's in limine ruling denied him the right to present a defense.

---

[5] State v. Cofield, 127 N.J. 328, 338 (1992).

19

Without doubt, "[e]vidence of prior episodes of child abuse unconnected with the direct cause of the child's death [is] admissible as proof of absence of accident or mistake." State v. Moorman, 286 N.J. Super. 648, 660 (App. Div. 1996) (citing State v. Wright, 66 N.J. 466, 468 (1975), rev'g on dissent, 132 N.J. Super. 130, 148 (App. Div. 1974) (Allcorn, J.A.D., dissenting)). "[A] trial court may, in its discretion, await the conclusion of the defendant's case before deciding the admissibility of 404(b) evidence to prove intent, or lack of mistake." State v. Cordero, 438 N.J. Super. 472, 486 (App. Div. 2014). While "[a] defendant's right to testify in his or her own defense is an essential element of due process[,] . . . whether to testify is a 'strategic or tactical decision to be made by a defendant with the advi[c]e of . . . counsel.'" Id. at 488 (third alteration in original) (citation omitted) (quoting State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988)). Accordingly, we reject defendant's argument.

Defendant contends Sergeant Sheftall was permitted to express her opinion about whether defendant was truthful while giving his May 2009 statement. He cites several snippets of the testimony. Having reviewed them in light of the totality of the sergeant's testimony, the complete video of defendant's statement, and the State's other evidence, any error was harmless beyond a reasonable doubt. See State v. Kemp, 195 N.J. 136, 157 (2008) (rejecting a similar claim and holding that admission of detective's "testimony in respect of

20

his skepticism concerning defendant's explanation was [not] 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result that it otherwise might not have reached.'" (quoting State v. Feal, 194 N.J. 293, 312 (2008))).

During her testimony, one of the State's medical experts mentioned L.H.'s fractured clavicle. There was no objection. Defendant claims this fleeting reference was plain error requiring reversal. The argument lacks sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Defendant contends the jury verdict was inconsistent, the judge erred by not sua sponte charging simple assault as a lesser-included offense of manslaughter and aggravated manslaughter, and the verdict sheet was confusing and misleading because it did not include simple assault as an alternative to the homicide offenses. None of these arguments merit reversal.

The medical evidence at trial revealed that L.H.'s congenital vascular malformation could have eventually been fatal, and the baby's general crankiness shortly before the fatal incident may have evidenced the beginning of the malformation's hemorrhaging. In other words, defendant argues the issue of causation was front and center for the jury to decide, and, the guilty verdict on simple assault, i.e., that he only caused bodily injury to L.H., is inconsistent with the manslaughter verdict, which required proof beyond a reasonable doubt that his conduct caused injuries resulting in L.H.'s death.

It is well-settled that "[w]e . . . must resist the temptation to speculate on how the jury arrived at a verdict." State v. Goodwin, 224 N.J. 102, 116 (2016) (citing State v. Banko, 182 N.J. 44, 53 (2004)). "Rather, 'we determine whether the evidence in the record was sufficient to support a conviction on any count on which the jury found the defendant guilty.'" Ibid. (quoting State v. Muhammad, 182 N.J. 551, 578 (2005)). Here, the evidence clearly supported the jury's guilty verdict as to manslaughter and simple assault.

Defendant never asked the judge to charge simple assault as a lesser included offense of aggravated or reckless manslaughter. "No defendant should be convicted of a greater crime or acquitted merely because the jury was precluded from considering a lesser offense that is clearly indicated in the record." State v. Garron, 177 N.J. 147, 180 (2003). In the absence of a party's request or objection, however, the evidence in the record must clearly indicate the need to provide the unrequested charge. State v. Alexander, 233 N.J. 132, 143 (2018).

Generally, a jury should be "instructed properly on the law and on all clearly indicated lesser-included offenses, even if at odds with the strategic considerations of counsel." Garron, 177 N.J. at 180. A court may depart from this requirement when to do otherwise would "cause complete surprise, or [be] so inconsistent with the defense as to undermine the fairness of the

proceedings[.]"  Id. at 181.  In State v. Doss, we found no plain error in failing to give a charge on a lesser-included offense where it was inconsistent with the defense strategy, and the jury was provided with another lesser-degree offense for its consideration.  310 N.J. Super. 450, 455–56 (App. Div. 1998).

Obviously, as noted, the evidence supported the guilty verdict of simple assault, for which the judge provided instructions as a lesser-included offense of aggravated assault, a separate count in the indictment.  Defendant's strategy at trial was to argue his conduct, throwing L.H. onto the bed, was not reckless at all, and, even if it was, the conduct did not cause L.H.'s death.  Defendant urged the jury to find his conduct caused no injuries to L.H., and her death was caused by the congenital vascular malformation.  As far as the homicide count was concerned, defendant's strategy sought an outright acquittal.  By convicting defendant of reckless manslaughter, the jury rejected the lack of causation argument.

To be sure, the presence of the aggravated assault count makes this case particularly unique.  It provided the jury with the option of acquitting defendant of the greater charge, homicide, and finding him guilty of a lesser-included offense, i.e., two different degrees of aggravated assault or simple assault.  We do not see the lack of instructions on these varying degrees of assault as presenting this jury with the disfavored "all or nothing choice," the evil which

the Court in <u>Garron</u> and other cases sought to avoid. In short, failing to provide a charge on aggravated or simple assault within the instructions on aggravated manslaughter and manslaughter was not plain error.

It follows that based on our reasoning, there was not cumulative error requiring reversal. Lastly, in Point XI, defendant reiterates all these contentions as a basis to find trial counsel provided ineffective assistance. We reject the argument since counsel's failure to raise losing arguments in the Law Division cannot evidence deficient performance. <u>State v. Echols</u>, 199 N.J. 344, 361 (2009). We do not preclude defendant raising other claims of ineffective assistance of counsel in a timely PCR petition if he chooses, but if these specific claims of ineffective assistance are raised anew, the PCR court should consider them procedurally barred pursuant to <u>Rule</u> 3:22-5.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24