# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2610-17

STATE OF NEW JERSEY,

      Plaintiff-Appellant/
Cross-Respondent,

v.

A.F.,

      Defendant-Respondent/
Cross-Appellant.

_____

Submitted June 24, 2020 – Decided June 17, 2021

Before Judges Accurso and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 17-02-0117.

Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney for appellant/cross-respondent (Jonathan Grekstas, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent/cross-appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the briefs).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

The State appeals from the non-custodial, probationary sentence imposed on defendant A.F.[1] after she entered a guilty plea to seven offenses arising from a motor vehicle crash while she was driving drunk. A.F. argues that the State's appeal is barred by double jeopardy protections and cross-appeals from the June 23, 2017 order of the Law Division denying her motion to dismiss a superseding indictment or, in the alternative, one count of the superseding indictment. We affirm both A.F.'s sentence and the June 23, 2017 order.

I.

The facts are not disputed. In July 2015, A.F. was brutally attacked by her then boyfriend. He kicked and stomped A.F.'s head before abandoning her, gravely injured, in a convenience store parking lot. A.F. spent seven days in the intensive care unit at a trauma center. The attack left A.F. with a brain injury, short-term memory loss, migraine headaches, and post-traumatic stress disorder, and exacerbated her preexisting depression and alcohol dependency. The man who attacked A.F. was convicted of first-degree attempted murder.

---

[1] We identify A.F. by her initials because she is a victim of domestic violence. R. 1:38-3(c)(12).

A-2610-17

On October 16, 2015, about three months after the attack, A.F. was intoxicated and under the influence of prescription medications when she received a telephone call from a friend who asked for help with an ongoing domestic violence incident. A.F. conducted an Internet search to determine whether it was safe to operate a vehicle in her intoxicated condition. She attempted to "come back down from the buzz" by eating before placing her three children, ages six, eight, and nine, in her car and driving to meet her friend. The children were not secured in child safety seats.

A.F. disregarded a stop sign and broadsided a police car. The officer driving the police car and A.F.'s six-year-old son suffered physical injuries requiring hospitalization. A.F.'s blood alcohol level at the time of the crash was 0.162 percent, more than double the legal limit to operate a vehicle.

On August 3, 2016, a grand jury indicted A.F., charging her with fourth-degree assault by auto (the injured officer), N.J.S.A. 2C:12-1(c)(1); third-degree assault by auto (the injured officer), N.J.S.A. 2C:12-1(c)(2); and three counts of second-degree endangering the welfare of a child (one count for each child), N.J.S.A. 2C:24-4(a). The State presented one witness to the grand jury: a police officer who responded to the crash. He described the crash and its aftermath, A.F.'s state of intoxication, the blood alcohol test results, and the lack of child

3

safety seats. In addition, the officer testified that the police officer victim was "substantially injured" with "a sacral fracture and fractures of both radius bones . . . ."

The State offered A.F. a plea agreement in which it would recommend six years of imprisonment. The court thereafter informed A.F. she was on a mandatory track for drug court and was required to undergo an evaluation for admission into the program. She neither accepted nor rejected the plea offer, as admission to drug court would have rendered the plea offer moot.

On August 31, 2016, the court informed A.F. that her evaluation revealed she was clinically accepted to drug court and, based on her charges and a lack of objection by the State, she was legally accepted into the program. A.F. requested additional time to negotiate a plea not involving drug court. The court allowed her to reject admission to drug court without prejudice to reapply if plea negotiations failed. The parties did not reach a plea agreement.

A.F. thereafter applied for admission to the pretrial intervention (PTI) program. N.J.S.A. 2C:43-12; R. 3:28-1 to -10. On January 4, 2017, A.F. was notified her application for PTI was rejected. Defense counsel informed the State A.F. intended to reapply for admission to drug court.

On February 15, 2017, the court again determined A.F. was clinically eligible for drug court. The State, however, objected to her admission to the program, arguing she was a danger to the community.

On February 22, 2017, a grand jury issued a superseding indictment, charging A.F. with the five counts in the original indictment along with two new counts: second-degree aggravated assault (the injured officer), N.J.S.A. 2C:12-1(b)(1); and second-degree aggravated assault (the injured child), N.J.S.A. 2C:12-1(b)(1). The new charges made A.F. statutorily ineligible for drug court, N.J.S.A. 2C:35-14(b), and added the potential for a mandatory eighty-five percent period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2.

At the grand jury hearing leading to the superseding indictment, the State again presented the testimony of the police officer who responded to the crash. His testimony was consistent with that which he gave to the first grand jury with additional testimony that the police officer victim sustained fractures of his wrists and ankles,[2] and serious bodily injuries from which he had not recovered. He also testified that A.F.'s child suffered internal injuries requiring hospitalization, which he characterized as serious. Notably, although the State

---

[2] At sentencing, the officer testified that only one of his ankles was fractured.

had asked to charge A.F. only with endangering the welfare of the child, the grand jury inquired about and returned the second-degree aggravated assault charge relating to A.F.'s injured child.

A.F. subsequently moved to dismiss the superseding indictment. She argued the State violated her federal and State due process rights by obtaining the superseding indictment out of vindictiveness for her attempt to negotiate a plea agreement not involving drug court. In the alternative, A.F. sought dismissal of the two second-degree aggravated assault counts because the State did not present the grand jury with sufficient evidence to establish those charges.

The trial court issued a written opinion denying A.F.'s motion. Noting that there is no presumption of vindictiveness when a prosecutor increases charges against a defendant during pre-trial plea negotiations, the court held A.F. must affirmatively prove vindictiveness to establish a due process violation. The court found credible the State's explanation that it sought the superseding indictment when it learned the police officer's injuries were permanent and had ended his law enforcement career, and that he strongly objected to A.F.'s admission to drug court.

With respect to the sufficiency of the evidence, the court held that the grand jury could reasonably have believed A.F. committed second-degree

A-2610-17

aggravated assault against both the police officer and child. The court reviewed the substance of the witness's testimony and concluded that, although not a medical expert, the witness provided at least some evidence of each of the elements of the crimes charged, including the serious nature of the victims' injuries. A June 23, 2017 order memorializes the court's decision.

A.F. thereafter entered a non-negotiated guilty plea to all counts of the superseding indictment, as well as several motor vehicle offenses. She admitted her son suffered a bowel or bladder injury in the crash.

The judge who sentenced A.F. had also sentenced her attacker. As explained in more detail below, the impact of the attempted murder on A.F., and her successful rehabilitation after the crash, were central factors at sentencing.

The court found two aggravating factors:

(1)    Two, N.J.S.A. 2C:44-1(a)(2) ("The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to . . . extreme youth . . . ."), to which the court gave slight weight; and

7

(2)     Nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law . . . ."), which the court considered to be "a major factor" that "applies in every case of this type . . . ."

The court rejected aggravating factor Three, N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense . . . ."). The court concluded that the physical, mental, and therapeutic treatment A.F. had undertaken after the crash rendered the risk of recidivism "very slim" and "[a]lmost negligible . . . ." Immediately after the accident, A.F. enrolled in an intensive outpatient treatment program, which she successfully completed. She has maintained sobriety, regained custody of her children, volunteers at a domestic violence victim support organization, and speaks publicly about domestic violence.

The court found nine mitigating factors:

(a)     Two, N.J.S.A. 2C:44-1(b)(2) ("The defendant did not contemplate that [her] conduct would cause or threaten serious harm . . . ."), to which the court gave slight weight;

(b)     Four, N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense . . . ."). The court based this factor, to which it gave slight weight, on A.F. having suffered physical and psychological abuse as a victim of domestic

8

violence, culminating in the attempted murder. The court also found that A.F. "was not recognized as needing services after her last domestic violence assault and intensive care visit" and "that this systemic failure to provide needed services subsequent to her attack contributed to her descent into alcoholism and severe depression[;]"

(c)    Six, N.J.S.A. 2C:44-1(b)(6) ("The defendant has compensated or will compensate the victim of [her] conduct for the damage or injury that he sustained, or will participate in a program of community service . . . ."). The court gave this factor moderate to substantial weight;

(d)    Seven, N.J.S.A. 2C:44-1(b)(7) ("The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense . . . ."), to which the court gave substantial weight in light of the absence of any criminal convictions in A.F.'s record;

(e)    Eight, N.J.S.A. 2C:44-1(b)(8) ("The defendant's conduct was the result of circumstances unlikely to recur . . . ."), to which the court gave moderate to substantial weight;

(f)     Nine, N.J.S.A. 2C:44-1(b)(9) ("The character and attitude of the defendant indicate that [she] is unlikely to commit another offense . . . ."), to which the court gave substantial weight;

(g)     Ten, N.J.S.A. 2C:44-1(b)(10) ("The defendant is particularly likely to respond affirmatively to probationary treatment . . . ."), to which the court gave substantial weight.  The court found A.F. followed recommendations in therapy, had not tested positive for drugs or alcohol since the crash, and "has come to grips with her addiction, has her depression in control and has been active in ongoing community service, counseling and therapy[;]"

(h)     Eleven, N.J.S.A. 2C:44-1(b)(11) ("The imprisonment of defendant would entail excessive hardship to [herself] or [her] dependents . . . ."), to which the court gave substantial weight.  The court found A.F.'s imprisonment would revictimize her children and reverse the progress she and they had achieved since her arrest; and

(i)     Twelve, N.J.S.A. 2C:44-1(b)(12) ("The willingness of the defendant to cooperate with law enforcement authorities . . . ."), to which the court gave substantial weight based on her non-negotiated plea to all charges.

The court was clearly convinced that the mitigating factors substantially outweighed the aggravating factors and that the interest of justice demanded that

A.F. be sentenced to a term appropriate to crimes one degree lower than that of which she was convicted. N.J.S.A. 2C:44-1(f)(2). She was, therefore, eligible for a sentence applicable to third-degree crimes, with a presumption of a custodial sentence of three to five years.

The court also found that A.F.'s criminal conduct was the result of "a maelstrom of engulfing" extraordinary and unanticipated circumstances and that given her "character and condition," "imprisonment would be a serious injustice which overrides the need to deter such conduct by others." See N.J.S.A. 2C:44-1(d). As a result of these findings, the court concluded the presumption of imprisonment for A.F.'s offenses had been overcome. This finding was based, in part, on the court's finding that A.F. was an "idiosyncratic" defendant for whom, in light of her recent history as a victim of domestic violence, her friend's call for help was an "extraordinary circumstance."

For second-degree aggravated assault of the officer, the court sentenced A.F. to a five-year, non-custodial term of probation, which included a requirement that she continue with mental health and substance abuse treatment. The court merged the remaining assault charges relating to the police officer into the second-degree aggravated assault conviction. For second-degree endangering the welfare of the injured child, the court sentenced A.F. to a five-

11

year, non-custodial term of probation, to be served consecutive to the other probationary term. The court merged the remaining counts of endangering the welfare of a child into the second-degree endangering conviction related to the injured child. The court merged the second-degree aggravated assault conviction relating to the child into the second-degree aggravated assault conviction relating to the officer.[3]

N.J.S.A. 2C:44-1(f)(2) provides that

> [i]f the court does impose sentence pursuant to this paragraph, or if the court imposes a noncustodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for [ten] days in order to permit the appeal of such sentence by the prosecution.

Rule 3:21-4(i) mirrors the statute by providing that "[i]n the event the court imposes sentence pursuant to N.J.S.A. 2C:44-1(f)(2), such sentence shall not become final until [ten] days after the date sentence was pronounced."

In an apparent reference to N.J.S.A. 2C:44-1(f)(2) and Rule 3:21-4(i), the court made the following statement at sentencing: "In accordance with Jarbath,[4]

---

[3] The court also sentenced A.F. on motor vehicle offenses not before the court.

[4] The court appears to be referring to the holding in State v. Jarbath, 114 N.J. 394 (1989), which it referenced earlier in the proceeding. That opinion concerns N.J.S.A. 2C:44-1(f)(2) but does not address the ten-day appeal period.

the State does have [ten] days which I will stay sentence until that is done (sic). I fully expect that to be done in this case, most likely." The court did not explain to A.F. the State's right to appeal her sentence during the ten-day statutory stay.

A February 9, 2018 judgment of conviction memorializes A.F.'s sentence. Despite the stay of sentence, A.F. reported to probation and began serving her term on the day of sentencing.

On February 14, 2018, the State filed a notice of appeal from the February 9, 2018 judgment of conviction. The notice of appeal does not mention the ten-day stay of A.F.'s sentence. In fact, in response to the question on the notice of appeal "[w]as bail granted or the sentence or disposition stayed?," the State responded "No."

Neither the court, A.F., nor the State took any action to implement Rule 2:9-3(c) after the notice of appeal was filed. That rule provides that

> execution of sentence shall be stayed pending appeal by the State pursuant to N.J.S.A. 2C:44-1[(f)](2). Whether the sentence is custodial or non-custodial, bail pursuant to R. 2:9-4 shall be established as appropriate under the circumstances. A defendant may elect to execute a sentence stayed by the State's appeal, but such election shall constitute a waiver of the right to challenge any sentence on the ground that execution has commenced.
>
> [R. 2:9-3(c).]

13

On February 16, 2018, the State filed an amended notice of appeal to correct the service list.

On February 28, 2018, the trial court sua sponte resentenced A.F. pursuant to Rule 3:21-10(a) and (c). The court did not change its findings with respect to aggravating and mitigating factors, its decision to sentence A.F. for crimes one degree lower than those of which she was convicted, or its conclusion that the presumption of incarceration had been overcome. The court sentenced A.F. to concurrent five-year terms of non-custodial probation on both second-degree aggravated assault convictions and on each of the three second-degree endangering the welfare of a child convictions. The court then merged the third-degree and fourth-degree assuault by auto convictions into the second-degree aggravated assault conviction relating to the police officer victim. In effect, the court resentenced A.F. to several concurrent five-year, non-custodial terms of probation instead of the two consecutive terms in the original sentence.

Although the court was aware the State had filed an appeal of A.F.'s original sentence and acknowledged that A.F. had commenced serving that sentence, it did not stay A.F.'s new sentence, mention N.J.S.A. 2C:44-1(f)(2), Rules 3:21-4(i) or 2:9-3(c), or inform A.F. she could elect not to serve her new sentence. During sentencing, the court stated that A.F. "must continue her

present counseling until it's been successfully completed and comply with any follow up and aftercare requirements; continue attendance at N.A. or N.A. or equivalent organization meetings and report to probation with attendance records; comply with all [Division of Child Protection & Permanency] recommendations and[/]or requirements."

On March 2, 2018, the court entered a judgment of conviction memorializing the resentencing. While the judgment of conviction was signed and filed on March 2, 2018, its first page is dated February 28, 2018. This explains conflicting resentencing dates in the parties' subsequent filings.

On March 5, 2018, the State filed an amended notice of appeal. The amended notice of appeal indicates that the State is appealing from the February 9, 2018 judgment of conviction. Below the instruction to "explain briefly the reason for amending the notice of appeal," the State responded that "[o]n February 28, 2018, [the] trial court amended the sentence to the [two] five[-]year probation terms to run concurrent (sic)." The State filed the March 2, 2018 judgment of conviction along with the amended notice of appeal.

On March 14, 2018, the State filed a second amended notice of appeal "correcting the defendant['s] name on notice of appeal." The second amended

15

notice of appeal again indicates the State is appealing the Febraury 9, 2018 judgment of conviction, but mentions the February 28, 2018 resentencing.

On April 2, 2018, A.F., with leave of court, filed a notice of cross-appeal as if within time. The notice of cross-appeal indicates A.F. is cross-appealing the February 9, 2018 judgment of conviction. The notice also states A.F. was resentenced on March 2, 2018, as does A.F.'s case information statement.

On April 12, 2018, the State filed a third amended notice of appeal "[a]mending the sentence date from 2/9/18 to . . . 2/28/18."

On May 11, 2018, A.F. filed an amended notice of cross-appeal "to correct dates of sentencing and motion" to February 28, 2018.

On May 29, 2018, A.F. filed a second amended notice of cross-appeal "to correct missing party information." This amended notice of cross-appeal identifies the resentencing date as February 28, 2018.

The State raises the following arguments.

> POINT [I][5]
>
> THE COURT ERRED IN FINDING [A.F.] SHOULD BE SENTENCED TO A TERM FOR A CRIME ONE DEGREE LOWER AND IN SENTENCING [A.F.] TO A PROBATIONARY TERM BECAUSE [A.F. PLED] GUILTY TO CHARGES CARRYING A PRESUMPTION OF INCARCERATION AND

---

[5] We renumbered the parties' point headings for clarity.

16

THERE IS NO SERIOUS INJUSTICE IN SENTENCING [A.F.] TO A TERM OF INCARCERATION.

POINT [II]

[A.F.] SHOULD BE SENTENCED TO CONSECUTIVE TERMS BECAUSE THE FACTS OF THIS CASE REPRESENT ESPECIALLY SUITABLE CIRCUMSTANCES FOR THE IMPOSITION OF CONSECUTIVE SENTENCES.

A.F. raises the following arguments in her cross-appeal:

[POINT I]

THE STATE'S SENTENCING APPEAL IS BARRED BY DOUBLE JEOPARDY.

A. THE STATE'S APPEAL IS BARRED BY DOUBLE JEOPARDY BECAUSE THE STATE DID NOT FILE A TIMELY APPEAL FROM THE RESENTENCING.

B. THE STATE'S APPEAL IS BARRED BY DOUBLE JEOPARDY BECAUSE [A.F.] BEGAN SERVING THE SENTENCE WITHOUT NOTICE OF HER RIGHT OF ELECTION UNDER R. 2:9-3(c).

C. [A.F.'S] APPEAL OF THE MOTION DENYING DISMISSAL OF THE SUPERSEDING INDICTMENT DOES NOT PRECLUDE HER DOUBLE-JEOPARDY CLAIM.

POINT [II]

THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED BECAUSE IT WAS A VINDICTIVE

17

ACT THAT BLOCKED [A.F.] FROM DRUG COURT AND SUBJECTED HER TO AN ENHANCED SENTENCE UNDER THE NO EARLY RELEASE ACT.

POINT [III]

THE CHARGE OF SECOND-DEGREE ASSAULT ALLEGED IN COUNT [SEVEN] OF THE SUPERSEDING INDICTMENT MUST BE DISMISSED BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT IT.

POINT [IV]

THE COURT PROPERLY FOUND, UNDER N.J.S.A. 2C:44-1[(d)] AND 2C:44-1[(f)](2), THAT A PROBATIONARY TERM WAS WARRANTED.

In response to the cross-appeal, the State raises the following arguments:

POINT I

THE SUPERSEDING INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THERE WAS NO PRESUMPTION OF VINDICTIVENESS, THERE WAS AN EXTENDED PERIOD OF TIME BETWEEN THE SUPERSEDING INDICTMENT AND TRIAL, AND [A.F.] WAS NOT BEING PUNISHED FOR EXERCISING A LEGAL "RIGHT" PROTECTED UNDER THE CONSTITUTION.

POINT II

THE CHARGE OF AGGRAVATED ASSAULT ALLEGED IN COUNT SEVEN OF THE SUPERSEDING INDICTMENT SHOULD NOT BE

18 A-2610-17

DISMISSED BECAUSE THE STATE PRESENTED A PRIMA FACIE CASE TO SUPPORT SUCH A CHARGE.

## II.

We begin with A.F.'s argument that the State failed to perfect its appeal of the March 2, 2018 judgment of conviction. "The right of the State to appeal a probationary sentence imposed upon a defendant for a conviction of a first or second degree crime . . . is purely statutory." State v. Watson, 183 N.J. Super. 481, 483 (App. Div. 1982). "Under the clear and explicit language of [N.J.S.A. 2C:44-1(f)(2)] the State has ten days within which to appeal from the imposition of certain sentences." Ibid. "[T]he ten-day time requirement is jurisdictional and must be complied with strictly." Id. at 484. Where a defendant is resentenced, the ten-day period commences on resentencing. State v. Gould, 352 N.J. Super. 313, 318 (App. Div. 2002).

The court resentenced A.F. on February 28, 2018 and entered the judgment of conviction reflecting her new sentence on March 2, 2018. A.F. argues that the State did not file an amended notice of appeal specifying that it was appealing the resentencing until April 12, 2018, forty-three days after February 28, 2018 and forty-one days after March 2, 2018. A.F. argues that the only amended notice of appeal filed by the State within ten days of her

A-2610-17

resentencing was the March 5, 2018 amended notice of appeal, which indicates that the State was appealing the February 9, 2018 judgment of conviction.

We agree with A.F.'s argument that the February 28, 2018 resentencing and March 2, 2018 judgment of conviction imposed a new sentence, triggering a second ten-day period in which the State could file an appeal. We disagree, however, with her contention that the March 5, 2018 amended notice of appeal failed to perfect the State's appeal of the new sentence. While the March 5, 2018 amended notice of appeal indicates that the State "appeals to the Appellate Division from a[n] . . . order entered on 02/09/2018[,]" it also states that the reason for filing an amended notice of appeal is that the court amended A.F.'s sentence on February 28, 2018. In addition, along with the amended notice of appeal, the State filed a copy of the March 2, 2018 judgment of conviction memorializing A.F.'s new sentence. The March 5, 2018 amended notice of appeal sufficiently identified the State's intention to appeal A.F.'s new sentence as memorialized in the attached March 2, 2018 judgment of conviction. The State appeal, therefore, was perfected in a timely manner.

III.

We are not persuaded by A.F.'s argument that the State's appeal is barred by the constitutional protection against double jeopardy. The Fifth Amendment

20

to the United States Constitution guarantees that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb . . . . " A similarly worded provision in Article I, Paragraph 11 of the New Jersey Constitution mirrors that protection. "There is no distinction in the protections afforded by one provision as opposed to the other . . . ." State v. Schubert, 212 N.J. 295, 304 (2012); State v. Roth, 95 N.J. 334, 344 (1984).

The protection "against multiple punishments may be implicated when a state seeks an increase in a defendant's sentence on appeal." State v. Sanders, 107 N.J. 609, 618 (1987). The analysis of whether double jeopardy protections have been violated in this context centers on a defendant's expectation of finality in a sentencing decision and her knowing waiver of her protection against having a sentence increased. Id. at 619; see also United States v. DiFrancesco, 449 U.S. 117, 136 (1980). Typically, finality interests arise after the "final judgment and commencement of the sentence." State v. Veney, 327 N.J. Super. 458, 461 (App. Div. 2000); see State v. Ryan, 86 N.J. 1, 10 (1981) ("[J]eopardy attaches as soon as execution of the sentence commences."). If jeopardy attaches, it "prohibits the increase of the term imposed in a discretionary sentence." Veney, 327 N.J. Super. at 461 (quoting State v. Kirk, 243 N.J. Super. 636, 642 (App. Div. 1990)).

A.F. argues that her sentence became final when she commenced serving probation on February 9, 2018 and, because she was not informed by the court of her right under Rule 2:9-3(c) to choose not to serve her sentence after the State filed its first notice of appeal, double jeopardy considerations bar consideration of the State's appeal.  A.F.'s argument is meritless.

The Supreme Court has held, with respect to N.J.S.A. 2C:44-1(f)(2), that

> [a]s with the statute at issue in DiFranceso, the Code of Criminal Justice expressly provides for prosecutorial appeal of a lenient sentence.  See N.J.S.A. 2C:44-1[(f)]2.  Defendants are charged with notice of the terms of this provision.  Moreover, the trial court explicitly advised defendants that their sentence would be stayed to permit the State to appeal.
>
> [Sanders, 107 N.J. at 620 (citing State v. Williams, 203 N.J. Super. 513 (App. Div. 1985); State v. Giorgianni, 189 N.J. Super. 220, 227 (App. Div. 1983)).]

In State v. Evers, 368 N.J. Super. 159 (App. Div. 2004), we applied the imputed knowledge standard announced in Sanders to Rule 2:9-3(c).  In that case, the defendant pleaded guilty to a second-degree offense, which the sentencing court downgraded to the third-degree range for sentencing pursuant to N.J.S.A. 2C:44-1(f)(2).  Id. at 162-63.  The court also concluded that the defendant's imprisonment would constitute a serious injustice under N.J.S.A. 2C:44-1(d) and sentenced him to a probationary term.  Id. at 163.

The State appealed the sentence within ten days pursuant to N.J.S.A. 2C:44-1(f)(2).  Ibid.  It did not, however, move for a stay pursuant to Rule 2:9-3(c) for several months, during which the defendant began serving the sentence. Id. at 169.[6]  The Supreme Court reversed the defendant's sentence, remanding the matter for resentencing.  Id. at 167.  On remand, the court sentenced the defendant to a custodial term.  Ibid.

On appeal to this court from the sentence imposed on remand, the defendant argued that the new sentence was barred by double jeopardy protections because he served forty-seven days of the original sentence before a hearing was held under Rule 2:9-3(c).  Ibid.  We rejected his contentions.

We held that where a trial court imposes on a conviction for a first- or second-degree crime a sentence appropriate for a crime one degree lower than the conviction or if it imposes a noncustodial or probationary term, the sentence does not become final until ten days after the sentencing decision is rendered. Id. at 168.  We explained, that "[n]ot only did the State's appeal preclude the sentence from becoming final within ten days . . . , but it also effected a

_____

[6]  In Evers, we refer to Rule 2:9-3(d).  An amendment to the rule effective September 1, 2004, after we issued our decision in Evers, deleted subparagraph (a) of the rule and redesignated subparagraph (d) as subparagraph (c).  All of our references to Evers, including quotations from the opinion, have been modified to comport with the Rule's current subparagraph designation.

A-2610-17

mandatory stay of the sentence under Rule 2:9-3[(c)]." Ibid. The "initial sentence was not final during the ten-day period following its imposition, N.J.S.A. 2C:44-1[(f)](2) [and] it lacked finality after the ten-day period because of the Rule 2:9-3[(c)] stay. Because a final sentence never became effective, double jeopardy never attached." Id. at 169.

We rejected the defendant's argument that the State's delay in seeking a stay and his commencement of sentence demonstrated his belief that the sentence was final. We held that under the holding in Sanders, the "[d]efendant was charged with notice of the stay and had no reasonable expectation of finality" and that "[w]e find additional authority for this determination in the last sentence of Rule 2:9-3[(c)]," which provides that a defendant who elects to serve his sentence after the State has filed an appeal waives his double jeopardy protection. Ibid. We did not conclude that the trial court, or any other party, was obligated to inform the defendant of the mandatory stay of his sentence.

A.F. commenced her probationary term on the day of her initial sentencing. At the first sentencing hearing, the court stated, albeit in an imprecise fashion, that it was staying the sentence for ten days. In addition, A.F. is charged with knowledge of N.J.S.A. 2C:44-1(f)(2). She elected to report to probation authorities immediately after sentencing to begin her sentence.

Five days after the initial sentencing, the State filed a notice of appeal challenging A.F.'s sentence. Under our holding in <u>Evers</u>, A.F. was charged with knowledge of <u>Rule</u> 2:9-3(c) and its provision alerting her to the waiver of her double jeopardy protection if she served her sentence during the pendency of the State's appeal. Neither A.F. nor her counsel applied to the court to stay the continued service of her sentence.

Two weeks later, the court resentenced defendant. A.F., charged with knowledge of the statutory stay, continued to serve her sentence, even after the State filed its March 5, 2018 amended notice of appeal. We are not persuaded by A.F.'s argument that at the resentencing, the trial court effectively directed her to continue serving her probationary sentence. The court's reference to A.F. continuing with therapy and other conditions of probation is merely a reiteration of the terms of her sentence, not an order denying her right to elect not to serve her sentence while the of State's appeal is pending under <u>Rule</u> 2:9-3.[7]

---

[7] A.F.'s reliance on our holding in <u>Williams</u> is misplaced. To the extent that <u>Williams</u> stands for the proposition that the sentencing court is obligated to inform a defendant of her right to elect not to serve her sentence during the pendency of the State's appeal, it has been abrogated by the Supreme Court's holding in <u>Sanders</u> and our application of that holding in <u>Evers</u>. We do not consider ourselves bound by the <u>dicta</u> in <u>State v. Thomas</u>, 459 N.J. Super. 426, 434 (App. Div. 2019), suggesting that the State must move for a stay of a probationary sentence pursuant to <u>Rule</u> 2:9-3(c) in order to seek a harsher

For sake of completeness, we also conclude A.F. did not waive her expectation in the finality of her sentence by filing a cross-appeal. A defendant who appeals a conviction cannot claim a "legitimate expectation of finality" in the sentence she received. State v. Rodriguez, 97 N.J. 263, 271 (1984). However, it is "[w]hat was sought by the appeal [that] defines what constitutes a legitimate expectation of finality." State v. Haliski, 140 N.J. 1, 23 (1995).

A.F.'s cross-appeal seeks dismissal of the superseding indictment or, in the alternative, one of the second-degree aggravated assault counts. If she were to prevail on her cross-appeal, A.F. could not expect to receive a sentence different from the five-year, non-custodial probationary term imposed on the five second-degree counts of the original indictment. With downgraded, non-custodial, and concurrent sentences on all five of the second-degree counts in the superseding indictment, A.F. already received every legal benefit she could expect with respect to the sentencing on those counts. If successful on appeal, she will be liable for either three or four second-degree counts, rather than five. Having already received every legal benefit available for sentencing on those

_____

sentence on appeal. See Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 332 (1949) (holding that dictum is a statement by a court "not necessary to the decision being made[,]" which is entitled to due consideration but is not binding precedent).

A-2610-17

three or four counts, to which she pled guilty, she could not expect to have her sentence reduced. Thus, this is not a case where the "defendant had to be aware that if he succeeded in setting aside his conviction on appeal [he could] again [be] convicted after a retrial, [and] he could receive a longer sentence upon resentencing." State v. Baker, 270 N.J. Super. 55, 77 (App. Div. 1994).

IV.

We turn to A.F.'s cross-appeal of the June 23, 2017 order denying her motion to dismiss the superseding indictment or, alternatively, count seven of the superseding indictment. It is the grand jury's responsibility to "determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it." State v. Hogan, 144 N.J. 216, 227 (1996). "At the grand jury stage, the State is not required to present enough evidence to sustain a conviction." State v. Feliciano, 224 N.J. 351, 380 (2016). Our Supreme Court has explained, "[t]he grand jury 'is an accusative rather than an adjudicative body,' whose task is to 'assess whether there is adequate basis for bringing a criminal charge.'" State v. Saavedra, 222 N.J. 39, 56 (2015) (quoting Hogan, 144 N.J. at 229-30). "A trial court deciding a motion to dismiss an indictment determines 'whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the

A-2610-17

State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.'" Id. at 56-57 (quoting State v. Morrison, 188 N.J. 2, 13 (2006)).

An indictment is presumed valid and should be disturbed only on the "clearest and plainest ground." State v. Perry, 124 N.J. 128, 168 (1992) (quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984)). An indictment may be dismissed if it is "manifestly deficient or palpably defective." Hogan, 144 N.J. at 229. We review a trial court's decision on a motion to dismiss an indictment for abuse of discretion. Saavedra, 222 N.J. at 55. "A trial court's exercise of discretionary power will not be disturbed on appeal 'unless it has been clearly abused.'" Id. at 55-56 (quoting State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994)). If the trial court's decision is based on a misconception of the law, however, we owe that decision no deference. State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010).

We agree with the trial court's conclusion that A.F. did not establish that the State obtained the superseding indictment in retaliation for her attempt to negotiate a plea agreement outside the strictures of drug court. In the pretrial setting, a presumption of vindictiveness does not apply. See State v. Long, 119 N.J. 439, 465-67 (1990). Although there is an opportunity for prosecutorial

vindictiveness, it is insufficient to justify a presumption with respect to the addition or subtraction of charges in the pretrial stage. State v. Gomez, 341 N.J. Super. 560, 576 (App. Div. 2001). "Trial preparation or continued investigation may well lead the prosecutor to the reasonable conclusion that additional or substituted charges are appropriate." Id. at 575.

In addition, the prosecutor may consider the penal implications of the charging decision when deciding whether to seek additional, more serious charges in a superseding indictment. Id. at 577. For example, we have found no vindictiveness where a prosecutor, aware that a defendant was granted post-conviction relief vacating a prior conviction and, as a result, would no longer face the presumption of incarceration on pending charges, sought a superseding indictment with a more serious charge supported by additional evidence. Id. at 577-78.

There is ample support in the record for the trial court's determination that A.F. failed to establish vindictiveness. After A.F. rejected the State's plea offer, the State discovered the police officer victim's injuries were more serious than previously known and had ended his law enforcement career. In addition, the victim expressed his adamant opposition to A.F.'s admission to drug court. These are valid reasons for the prosecutor to seek a superseding indictment

based on new evidence charging A.F. with a more serious crime. Although the prosecutor did not seek an additional charge relating to A.F.'s injured child, the grand jurors raised the question of whether she could be charged with second-degree aggravated assault for his injuries and approved the charge.

Nor are we persuaded by A.F.'s argument that the grand jury was presented with insufficient evidence to support the second-degree aggravated assault charge relating to her child.[8] In order to sustain a charge of second-degree aggravated assault the State must present to the grand jury evidence, with the benefit of reasonable inferences derived therefrom, that: (1) defendant purposely attempted to cause serious bodily injury; or (2) caused serious bodily injury purposely, or knowingly; or (3) caused serious bodily injury recklessly under circumstances manifesting an extreme indifference to the value of human life. N.J.S.A. 2C:12-1(b)(1); State v. McAllister, 221 N.J. Super. 355 (App. Div. 1986).

Recklessly under circumstances manifesting an extreme indifference to the value of human life is distinct from mere recklessness. Under the former there is a probability of injury while under the latter there is a possibility. State

---

[8] Although A.F. challenged both second-degree aggravated assault counts before the trial court, she appeals only the denial of her motion to dismiss the charge relating to her child for sufficiency of evidence.

v. Pigueiras, 344 N.J. Super. 297, 316 (App. Div. 2001).  Extreme indifference to human life is conduct that indicates that life does not matter, or that involves a pronounced, unusual, or violent failure to accord any importance or value to human life.  State v. Farrell, 250 N.J. Super. 386, 390-91 (App. Div. 1991).  The difference in degree of probability is found in the circumstances surrounding the occurrence, not in the defendant's evaluation of those circumstances.  State v. Curtis, 195 N.J. Super. 354, 364-65 (App. Div. 1984); Pigueiras, 344 N.J. Super. at 312-13, 316.

Serious bodily injury is one which subjects the victim to a substantial risk of death, State v. Turner, 246 N.J. Super. 22, 27-8 (App. Div. 1991), or where such injury causes "serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  State v. Norman, 405 N.J. Super. 149, 160 (App. Div. 2009).

The grand jury heard testimony that A.F., aware she had been drinking alcohol and taking prescription medications, put her three children into her car without child safety seats to rush to the scene of an ongoing domestic violence incident.  The grand jury was presented with evidence that A.F.'s blood alcohol content was more than twice the legal limit to operate a car and that she heedlessly ignored a stop sign, crashing into another vehicle.  The violent nature

A-2610-17

of the crash was readily inferable from the evidence of the injuries suffered by the two victims and the officer's description of the wrecked state of the vehicles after the crash. There was sufficient evidence from which the jury could infer A.F. acted recklessly under circumstances manifesting an extreme indifference to the value of the life of her children and the motoring public.

In addition, the grand jury heard testimony describing her son's internal injuries, which required the six-year-old's hospitalization. That evidence included the testimony of the officer who witnessed the child in the aftermath of the crash experiencing severe abdominal pain that required emergency medical attention. The jury could reasonably infer from that evidence that the child suffered a serious bodily injury because of A.F.'s actions.

V.

Finally, we address the State's appeal of A.F.'s sentence. Our review of a sentencing decision is limited. State v. Miller, 205 N.J. 109, 127 (2011). "In general, a trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989). We must affirm a sentence

32

unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting Roth, 95 N.J. at 364-65).]

Our sentencing statutes apply a presumption of imprisonment to persons convicted of a first- or second-degree crime, N.J.S.A. 2C:44-1(d), and a presumption of non-imprisonment to a person convicted of a third- or fourth-degree crime who is a first-time offender, with exceptions not applicable here. N.J.S.A. 2C:44-1(e). In addition, as explained above,

[i]n cases of convictions for crimes of the first and second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.

[N.J.S.A. 2C:44-1(f)(2).]

When a court sentences a defendant to a term appropriate to a crime one degree lower than that of which she was convicted, the presumption of incarceration attached to the original degree of the crime applies. State v. Nance 228 N.J. 378, 398-99 n.4 (2017). However, the presumption of imprisonment

33

for a second-degree crime may be overcome where, "having regard to the character and condition of the defendant," the court concludes that her "imprisonment would be a serious injustice which overrides the need to deter such conduct by others." See N.J.S.A. 2C:44-1(d).

The State challenges both the trial court's decision to sentence A.F. to a term appropriate for crimes one degree lower than that of which she was convicted and its conclusion that the presumption of incarceration attached to her second-degree convictions was overcome.

> [I]n sentencing under [N.J.S.A. 2C:44-1(f)(2)], a court must apply the basic principles that are applicable to all sentencing decisions under the Code. It is therefore, paramount that the sentence reflect the Legislature's intention that the severity of the crime now be the most single important factor in the sentencing process. The focus on the offense rather than the offender is inexorable in formulating a sentence. The paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others.
>
> [State v. Megargel, 143 N.J. 484, 500 (1996).]

"In evaluating the severity of the crime, the trial court must consider the nature of and the relevant circumstances pertaining to the offense. Every offense arises in different factual circumstances." Ibid.

In addition, "facts personal to the defendant may be considered in the sentencing process." Id. at 501.

34                                          A-2610-17

> Courts should consider a defendant's role in the incident to determine the need to deter him from further crimes and the corresponding need to protect the public from him. Was the defendant the mastermind, a loyal follower, an accomplice whose shared intent is problematic, or an individual who is mentally incapable of forming the necessary criminal intent?
>
> [Ibid.]

"Deterrence is the key to the proper understanding of protecting the public." Ibid. (citing In re C.A.H., 89 N.J. 326, 334 (1982)). "[D]emands for deterrence are strengthened in direct proportion to the gravity and harmlessness of the offense and deliberateness of the offender." Ibid. (alteration in original) (quoting In re C.A.H., 89 N.J. at 337).

"The decision to downgrade a defendant's sentence 'in the interest of justice' should be limited to those circumstances in which [a] defendant can provide 'compelling' reasons for the downgrade." Id. at 501-502 (citing State v. Jones, 197 N.J. Super. 604, 607 (App. Div. 1984)). These reasons must be "in addition to, and separate from," the mitigating factors that substantially outweigh the aggravating factors. Id. at 505.

"The standard for overcoming the presumption of imprisonment is distinct from that for downgrading an offense. Moreover, the reasons offered to dispel the presumption of imprisonment must be even more compelling than those that

might warrant downgrading an offense." State v. Evers, 175 N.J. 355, 389 (2003) (citing Megargel, 143 N.J. at 498-502). "In permitting consideration of 'the character and condition of the defendant' in determining whether imprisonment would be a 'serious injustice,' the Code left 'a residuum of power in the sentencing court not to imprison in those few cases where it would be entirely inappropriate to do so.'" Id. at 389 (quoting Roth, 95 N.J. at 358 (internal quotation marks omitted)).

"[T]his residuum of power may be legitimately exercised in those 'truly extraordinary and unanticipated' cases where the 'human cost' of punishing a particular defendant to deter others from committing his offense would be 'too great.'" Ibid. (quoting State v. Rivera, 124 N.J. 122, 125 (1991) (internal quotation marks omitted) and Roth, 95 N.J. at 358 (internal quotation marks omitted)). As the Court explained,

> Conceptually, this determination is very close to, perhaps indistinguishable from, the determination that "extreme mitigating factors" outweigh any aggravating factors. However, the standard for invalidating sentences because of a "serious injustice" is extremely narrow: it should be applied only under circumstances that are "truly extraordinary and unanticipated." This court has rarely found such "extraordinary and unanticipated" sentences.
>
> [Jarbath, 114 N.J. at 406-07 (citing Roth, 95 N.J. at 355, 358).]

A-2610-17

For example, the presumption of incarceration was found to be overcome where a mentally retarded and psychotic woman whose condition "prevented her from really understand[ing] at all what she did wrong, or how it happened" accidentally killed an infant, resulting in a manslaughter conviction. Id. at 405. In State v. E.R., 273 N.J. Super. 262, 272 (App. Div. 1994), we found that the presumption of incarceration was overcome "based on the fact that defendant was suffering from HIV neuropathy, severe anemia, and leukopenia" and had only six months to live.

Having carefully reviewed the record, we find no basis to reverse the trial court's determination that A.F.'s crimes fall into the narrow category of offenses that qualify for a reduction in degree for sentencing purposes and for which the presumption of incarceration has been overcome. The record establishes that A.F. suffered profound effects as the result of the near-fatal beating she endured at the hands of her then boyfriend shortly before the events resulting in her criminal acts. She was hospitalized for an extended period with a severe head injury, which left her with lasting symptoms and exacerbated her existing depression and alcohol addiction. The sentencing judge, who also presided at the trial of A.F.'s assailant, acknowledged that the impact of the assault on A.F. went unrecognized prior to the crash. She was provided no services to assist

with the management of the emotional and physical consequences of the assault and its impact on her existing conditions.

A.F.'s mental state, fragile in the aftermath of the assault, likely was the cause of her poor judgment on the night that her friend called for help with an ongoing domestic violence incident. This was an extraordinary circumstance for A.F. There can be no doubt that A.F. made a series of decisions that created an intolerable risk of harm to her children and the motoring public, including the police officer she seriously injured: (1) to personally intervene in a domestic violence incident instead of calling police to assist her friend; (2) to drive while intoxicated and under the influence of medication; (3) to put her young children in the car without safety seats; and (4) to disregard a stop sign. Those decisions, however, can be traced directly to the untreated consequences of A.F. having nearly been murdered in a horrific domestic violence assault a few months prior to the crash.

The record also establishes that immediately after the crash, A.F. enrolled in treatment for her substance abuse and mental health issues. As of sentencing, she had maintained sobriety, regained custody of her children, and meaningfully engaged in community service and public speaking addressing domestic violence. The record supports the trial court's conclusion that A.F. is highly

38

unlikely to reoffend and that her crimes were the result of a maelstrom of extraordinary and unanticipated circumstances.

In reaching this conclusion, we in no way intend to diminish the significant physical, emotional, and economic injuries A.F. caused the police officer victim of her crimes. He suffered fractures and other physical injures that ended his law enforcement career, affected his relationship with his family, and imposed economic hardship on him and his family. In addition, A.F. caused her six-year-old child internal injuries that required hospitalization. We are satisfied, however, that the complex and unique circumstances surrounding A.F.'s criminal acts warrant the trial court's sentencing decisions.

Finally, we have considered the State's arguments with respect to the concurrent sentences, and the factual basis for the trial court's findings regarding aggravating and mitigating factors, and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

The sentence imposed on A.F. in the March 2, 2018 judgment of conviction and the June 23, 2017 order of the Law Division are affirmed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

39                                                                                      A-2610-17